IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ZELLER PROPERTIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:15-cv-1426-DGW |
| | ) | |
| HARTFORD FIRE INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

**WILKERSON, Magistrate Judge:**

Now pending before the Court is a Motion for Summary Judgment filed by Defendant, Hartford Fire Insurance Company, on July 24, 2017 (Doc. 30). For the reasons set forth below, the Motion is **GRANTED**.

### BACKGROUND

The following facts are undisputed. Zeller Properties, Inc. owns a commercial building in Marion, Illinois that is used for office space. In November, 2012, Plaintiff became aware of "adhesive oozing" from beneath the carpet of office space leased to Hyatt Hotels. Plaintiff hired engineers to determine the cause of the oozing and discovered that it was due to excessive moisture in the concrete slab underneath the building. Almost a year later, in October, 2013, a water line buried 6-8 feet underground burst, causing flooding along the front of the building. Plaintiff subsequently learned that the pipe had been degrading over time and had caused the increased water content of the concrete slab and hence the liquefaction of adhesive that was observed in the office space. While Defendant disagrees as to the source of the water, it agrees that the problems observed in the building were due to excessive moisture in the concrete slab.

Plaintiff has a "Special Multi-Flex Policy," i.e. property insurance, issued by Defendant that was in force at the time of the above events (Doc. 1-1, pp. 13-63; Doc. 1-2). In April, 2014, Plaintiff made a claim related to the burst pipe. It sought coverage for replacement of the pipe, landscaping, and installation of a VeraShield moisture barrier system (Doc. 30-4, p. 1). Defendant paid $25,000, the policy limit for "water seepage," and $4,597.16 under the "tear out and repair" provision to complete landscaping outside of the building due to the replacement of the burst pipe (*Id.* 2). While there is no dispute that Plaintiff was entitled to the above sums pursuant to the terms of the policy, Defendant declined to pay for replacing the burst pipe itself or for any specific preventative measures, like the VeraShield moisture barrier system, due to certain exclusions in the policy (*Id.*).

## DISCUSSION

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FEDERAL RULE OF CIVIL PROCEDURE 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

There is no dispute that Illinois law governs this action. The primary objective when interpreting insurance policies, like contracts, is to give effect to the intent of the parties. *Valley Forge Insurance Company¸ Swiderski Electronics, Inc.*, 860 N.E.2d 307, 362 (Ill. 2006). Policies are construed as a whole, "giving effect to every provision, if possible, because it must be assumed that every provision was intended to serve a purpose.'" *Id*. at 362-3. Unambiguous words in a policy are applied as written; ambiguous words, those that are subject to more than one reasonable interpretation, are construed against the drafter, which in this case is Defendant. *Id*. Ambiguity does not exist simply because the parties disagree as to meaning and the "court will not search for ambiguity where there is none." *Id*.

As set forth by the parties, the policy covers "water seepage" which is defined as "physical loss or direct physical damage . . . resulting from water under the ground surface pressing on, or flowing or backing up or seeping through . . . foundations, walls, floors or paved surfaces." (Doc. 1-1, p. 43, Section A.36). Defendant paid the policy limit of $25,000 under this provision. The policy also covers water damage which kicks in when monies are paid for "the escape of water or other liquid" (*Id*. Section A.35). Defendant paid $4,597.16 under this provision. The parties dispute concerns whether Defendant should pay for the burst water pipe: Plaintiff contends that it is part of the sprinkler system and covered by the policy and Defendant contends that the part of the policy allowing for such claims does not apply.

Defendant argues that the claim for the water pipe is excluded by the following provision:

**B. SPECIFIC EXCLUSIONS**
    9. Flood, Water, and Water Under the Ground
        a. We will not pay for loss or damage caused by, resulting from, arising out of, or in any way related to:
            (1) Flood, which means:
                (a) Surface water, waves, tidal water, tidal waves, tsunamis, or overflow of any natural or manmade body of water from its boundaries, all whether driven by wind or not.
                (b) Mudslide or mudflow, meaning a river or flow of liquid mud directly or indirectly caused by flooding or the accumulation of water under the ground.
                (c) Water or other material that backs up or overflows from any sewer, septic tank or drain.
                (d) Flood does not include back-up or overflow of water or other material arising from any other origin.
            (2) Release of water held by a dam, levee or dike or by a water or flood control device, or
            (3) Water under the ground surface pressing on, or flowing or seeping through:
                (a) Foundations, walls, floors or paved surfaces;
                (b) Basements, whether paved or not; or
                (c) Doors, windows or other openings.
        b. This Exclusion applies whether or not caused by a weather condition.
        c. **If direct physical loss or direct physical damage by fire, explosion or "Sprinkler Leakage" ensues to Covered Property, we will pay only for such ensuing loss or damage.**[1]
        d. This exclusion applies whether or not the loss event results in widespread damage or effects a substantial area.

---

[1] The definition of "sprinkler leakage" is:

"Sprinkler Leakage" means a leakage or discharge of a substance (except Halon) from an Automatic Fire Extinguishing System, including collapse of a tank that is part of the system."

(Doc. 1-1, p. 54).

(Doc. 1-2, pp. 15-16, emphasis added).

Plaintiff argues that the above highlighted "exclusion to the exclusion" would necessitate paying on the claim for the burst pipe. Defendant concedes that "the burst underground pipe that supplied Plaintiff's fire sprinkler system may be considered as being part of Automatic Fire Extinguishing System[2] as that term is defined by the Policy" (Doc. 36, p. 2 n.1). However, it argues that in order for the "sprinkler leakage" provision to apply, there must be (1) a loss due to flood, water or underground water; (2) a "fire, explosion or 'Sprinkler Leakage'" must follow from the flood, water, or underground water; and (3) the "fire, explosion or 'Sprinkler Leakage'" must cause additional damage (Doc. 36, p. 3). Defendant notes, and there is no dispute, that these events, in sequence, did not happen.

Defendant's argument is well taken. The sprinkler leakage "exception" is no exception at all. Rather, it is an acknowledgement that a flood, water, or water under the ground can lead to a fire, explosion, or sprinkler leakage. This is the only reasonable conclusion that can be drawn from inclusion of the word "ensues" which means "to take place afterward or as a result." MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/ensue (last visited March 16,

---

[2] "Automatic Fire Extinguishing System" is in turn defined as:

"Automatic Fire Extinguishing System" means:
(1)  Any automatic fire protective or extinguishing system, including connected:
   Sprinklers and discharge nozzles;
   (a)   Ducts, pipes, valves and fittings;
   (b)   Tanks, their component parts and supports; and
   (c)   Pumps and private fire protective mains.

(2)  Non-automatic fire protective systems, hydrants, standpipes and outlets, all when supplied from an automatic fire protective system.

 (Doc. 1-1, p. 43).

2018); *see also* DICTIONARY.COM, https://www.merriam-webster.com/dictionary/ensue (last visited March 23, 2018) ("to follow as a consequence; result."); *Anderson, Bicknell & Company v. Kaskaskia Live Stock Insurance Company*, 201 Ill.App. 25, 27 (Ill. App. Ct. 1915) ("The definition of the word 'ensue' in Webster's New International Dictionary is: 'To follow, to come afterward,; to follow as a consequence or in chronological succession; to result; as, an ensuing conclusion or effect; the year ensuing.'"). The leakage in this scenario was the initial incident, not something that resulted from a flood or other related event. Plaintiff has pointed to no other provision in the contract that would cover the type of compensation it sought. In light of this conclusion, Plaintiff is not entitled to recover on Count 2 alleging improper claims practices.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment filed by Defendant, Hartford Fire Insurance Company, on July 24, 2017 (Doc. 30) is **GRANTED**.

The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant and against Plaintiff and to **TERMINATE** this matter accordingly.

**DATED: March 23, 2018**

**DONALD G. WILKERSON**
**United States Magistrate Judge**